Slip Op. 18-143

## UNITED STATES COURT OF INTERNATIONAL TRADE

NATURAL RESOURCES DEFENSE COUNCIL, INC., CENTER FOR BIOLOGICAL DIVERSITY, and ANIMAL WELFARE INSTITUTE,

Plaintiffs,

v.

WILBUR ROSS, *in his official capacity as Secretary of Commerce*, UNITED STATES DEPARTMENT OF COMMERCE, CHRIS OLIVER, *in his official capacity as Assistant Administrator of the National Marine Fisheries Service*, NATIONAL MARINE FISHERIES SERVICE, STEVEN MNUCHIN, *in his official capacity as Secretary of the Treasury*, UNITED STATES DEPARTMENT OF THE TREASURY, KIRSTJEN NIELSEN, *in her official capacity as Secretary of Homeland Security*, and UNITED STATES DEPARTMENT OF HOMELAND SECURITY,

Defendants.

Before: Gary S. Katzmann, Judge
Court No. 18-00055

## OPINION

[Defendants' motion for stay pending appeal is denied.]

Dated: October 22, 2018

Giulia C.S. Good Stefani and Vivian Wang, Natural Resources Defense Council, of Santa Monica, CA, argued for plaintiffs. With them on the brief were Stephen Zak Smith for plaintiff, Natural Resources Defense Council Inc. and Sarah Uhlemann, of Seattle, WA, for plaintiffs, Center for Biological Diversity, and Animal Welfare Institute.

Agatha Koprowski, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for defendant. With her on the brief were Chad A. Readler, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Patricia M. McCarthy, Assistant Director. Of counsel on the brief were Jason Forman, National Oceanic and Atmospheric Administration, of Silver Spring, MD; Daniel J. Paisley, Department of the Treasury, of Washington, DC; and Glenn Kaminsky, Department of Homeland Security, of New York, NY.

Katzmann, Judge: Again before this Court is the saga of the vaquita, the world's smallest porpoise and a critically endangered species. In the recent litigation before this Court, it was undisputed that the vaquita, endemic to the northern Gulf of Mexico, was being caught inadvertently and strangled in the gillnets used to catch other fish. Consequently, the vaquita is on the verge of extinction; only about 15 of this evolutionarily distinct marine mammal remain today. Plaintiffs Natural Resources Defense Council ("NRDC"), Center for Biological Diversity, and Animal Welfare Institute moved to have this Court enjoin compliance by the defendants (several United States agencies and officials, collectively referred to as "the Government") with the Congressional mandate in the Marine Mammal Protection Act ("MMPA") that the Government[1] "shall ban the importation of commercial fish or products from fish which have been caught with commercial fishing technology which results in the incidental kill or incidental serious injury of ocean mammals in excess of United States standards." 16 U.S.C. § 1371(a)(2). Noting the undisputed fact that "the vaquita's plight is desperate, and that even one more bycatch death in the gillnets of fisheries in its range threatens the very existence of the species," this Court granted plaintiffs' motion, and banned, pending final adjudication of the merits, the importation of relevant fish and fish products[2] caught using "gillnets [which] incidentally kill vaquita in excess of United States standards" in the vaquita's range in the northern Gulf of Mexico. Nat. Res. Def. Council v. United States, 42 CIT ___, Slip Op. 18-92 (July 26, 2018) ("NRDC I") at 48–49. In response to the Court's order, the preliminary injunction has been fully implemented. Nonetheless, the Government now moves for a stay of the preliminary injunction pending appeal, alleging that the Court "made several legal errors when determining the likelihood of success and balancing the

---

1 See infra, p. 3 n.2.
2 Specifically, shrimp, curvina, sierra, and chano fish and their products.

potential harm to the parties."  Defs.' Mot. for Stay Pending Appeal, Aug. 24, 2018, ECF No. 32,

("Mot. to Stay") at 1–2.  The Government's request for a stay is denied.

The arguments presented by the Government are not new to the Court – they have been

presented before, and in two previous opinions, the Court has not been persuaded by them.  See

NRDC I, Slip Op. 18-92; Nat. Res. Def. Council v. United States, 42 CIT ___, Slip Op. 18-92

(Aug. 14, 2018) ("NRDC II").  In its ruling requiring the Government, pending final adjudication,

to ban the importation of "all fish and fish products from Mexican commercial fisheries that use

gillnets within the vaquita's range," the Court was simply enforcing the Congressional mandate

embodied in the Imports Provision:

> [I]t shall be the immediate goal that the incidental kill or incidental serious injury
> of marine mammals permitted in the course of commercial fishing operations be
> reduced to insignificant levels approaching a zero mortality and serious injury rate.
> The Secretary of the Treasury shall ban the importation of commercial fish or
> products from fish which have been caught with commercial fishing technology
> which results in the incidental kill or incidental serious injury of ocean mammals
> in excess of United States standards.[3]

16 U.S.C. § 1371(a)(2) (emphasis added).  The Government continues to object that the Court's

rulings ignore its concerns about asserted negotiations with Mexico.  Those speculative concerns,

---

[3] The National Oceanic and Atmospheric Administration's National Marine Fisheries Service
("NOAA Fisheries"), which is within the Department of Commerce, has interpreted this directive
to apply to the Departments of the Treasury and Homeland Security, in cooperation with NOAA
Fisheries.  See Fish and Fish Import Provisions of the Marine Mammal Protection Act, 81 Fed.
Reg. 54,390, 54,394 (Aug. 15, 2016) (if NOAA Fisheries finds a foreign fishery does not meet
MMPA standards, the agency, "in cooperation with the Secretaries of the Treasury and Homeland
Security, will identify and prohibit the importation of fish and fish products" from the harvesting
nation).  NRDC I at 4.  The term "Secretary," as used throughout the MMPA, and except where
otherwise specified, means "the Secretary of the department in which the National Oceanic and
Atmospheric Administration is operating, as to all responsibility, authority, funding, and duties
under this chapter with respect to [whales, dolphins, and porpoises] and members, other than
walruses, of the order Pinnipedia."  16 U.S.C. § 1362(12)(A)(i).  Currently, that is the Department
of Commerce.  See 50 C.F.R. § 216.3 ("Secretary shall mean the Secretary of Commerce or his
authorized representative.").

however, are not within the province of the court, as Congress has made clear through the language

of the statute.  The MMPA's language here is unambiguous: the Secretary of Treasury "shall" --

not "may" -- ban imports of fish under circumstances like those before this Court.  16 U.S.C. §

1371(a)(2).  It is implausible that in enacting this statute, Congress was blind to the reality that

embargoes may have an impact on foreign relations.  While the Government may believe that the

ban required by the Imports Provision does not present the best way to protect the vaquita, its

disagreement with Congress's choice does not create a basis to disregard the Act.  "[T]he self-

proclaimed wisdom of the [agency's] approach cannot save it because the Congress, in its more

commanding wisdom, has not authorized it."  Oceana, Inc. v. Locke, 670 F.3d 1238, 1243 (D.C.

Cir. 2011); see also Lachance v. Devall, 178 F.3d 1246, 1254 (Fed. Cir. 1999) (quoting FEC v.

Democratic Senatorial Campaign Committee, 454 U.S. 27, 32 (1981) ("The courts are the final

authorities on statutory construction. They must reject administrative constructions of the statute .

. . that are inconsistent with the statutory mandate or that frustrate the policy that Congress sought

to implement.")).

## PROCEDURAL BACKGROUND

The background relevant to the motion to stay the preliminary injunction pending appeal

is as follows:  As noted, on July 26, 2018, the Court granted the motion for a preliminary injunction

requiring the Government, pending final adjudication of the merits, to ban the importation of all

specified fish and fish products from Mexican commercial fisheries that use gillnets within the

vaquita's range.  NRDC I at 49.  Seeking to restrict the scope of the preliminary injunction, the

Government filed a "motion to clarify," which was denied by the Court.  NRDC II at 11.  In that

ruling, the Court further ordered the Government to "immediately ban the importation from

Mexico of all shrimp, curvina, sierra, and chano fish and their products caught with gillnets inside

the vaquita's range . . . unless affirmatively identified as having been caught with a gear type other

than gillnets or affirmatively identified as caught outside the vaquita's range." Id. at 14.   The

Court directed "that Defendants shall within the next 15 days submit for publication in the Federal

Register notice of the ban on shrimp, curvina, sierra, and chano and their products from Mexico

caught with gillnets within the vaquita's range." Id. at 14–15.  The Government was also ordered

to "file a status report with the Court within 30 days documenting compliance with this order, and

every 30 days thereafter until the preliminary injunction is fully implemented." Id. at 15.  On

August 24, 2018, the Government filed a notice of appeal from the Order of July 26, 2018 imposing

a preliminary injunction and also filed in this Court a motion for stay pending appeal.  Notice of

Appeal, ECF No. 42; Mot. for Stay.  On September 13, 2018, the Court heard oral argument on

the motion to stay.  Oral Argument, ECF No. 57.  On September 27, 2018, per order of the Court,

the parties submitted filings regarding the legislative history of the MMPA.  Letter re: MMPA

Legislative History, ECF No. 61; Notice of Suppl. Authority, ECF No. 62.

The Court has been informed that the preliminary injunction has been fully implemented.

More specifically, on August 31, 2018, the Government informed the Court that "[t]he

requirements of the preliminary injunction and the Court's August 14, 2018 order have . . . been

fully implemented," and that "[s]ince August 14, 2018, CBP [United States Customs and Border

Protection] has only allowed importers who can affirmatively represent in writing that their fish

products were not sourced using gillnets from within the vaquita's range to enter their goods in the

United States." Status Report, ECF No. 49 ("Aug. 31 Status Report") at 1–2.  On October 1, 2018,

the defendants reported that the Government has "continued to implement the preliminary

injunction" and that "[o]n September 21, 2018 . . . U.S. Customs and Border Protection (CBP)

informed importers that, as of October 15, 2018, it will only accept affected imports that are

accompanied by a certification of admissibility form, as published in the Federal Register on

August 28, 2018." Status Report, ECF No. 64 ("Oct. 1 Status Report") at 1 (citing Import

Restrictions on Certain Mexican Fish and Fish Products, CSMS #18-000555 (Sept. 21, 2018),

*available at* https://csms.cbp.gov/csms.asp (click on CSMS# 18-000555)).

## STANDARD OF REVIEW

A stay pending appeal "is not a matter of right, even if irreparable injury might otherwise

result," Nken v. Holder, 556 U.S. 418, 419 (quoting Virginian R. Co. v. United States, 272 U.S.

658, 672 (1926)), and the party seeking the stay "bears the burden of showing that the

circumstances justify an exercise of [the court's] discretion," id. at 433–34.

## DISCUSSION

The Government argues that this Court should stay its preliminary injunction pending

appeal because, allegedly, (1) the Court erred in issuing the injunction and (2) the Government is

suffering ongoing, serious harm as a result of the injunction. Mot. for Stay at 1–2.

When determining whether to stay a preliminary injunction pending appeal, courts look at

four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed

on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether

issuance of the stay will substantially injure the other parties interested in the proceeding; and (4)

where the public interest lies." Nken, 556 U.S. at 434 (quoting Hilton v. Braunskill, 481 U.S. 770,

776 (1987)). The first two factors are the "most critical" to a court's determination. Id. To satisfy

the first factor, more than a "mere possibility of relief is required," id. (internal quotation omitted);

a movant must show either a "strong likelihood of success on the merits" or "a substantial case on

the merits provided that the harm factors militate in [the movant's] favor," Celsis In Vitro, Inc. v.

CellzDirect, Inc., 404 F. App'x 481, 482 (Fed. Cir. 2010). Similarly, to satisfy the second factor,

the movant must show more than a mere "possibility of irreparable injury." Nken, 556 U.S. at 434 (citation omitted).

The Government has failed to meet its burden for a stay.  It has offered no persuasive reason why the Court should reverse its determination that plaintiffs have standing to bring this action. As detailed in NRDC I, the Government's inaction harms plaintiffs' vaquita-related interests, NRDC I at 25–27, plaintiffs adequately demonstrated that their harm was traceable to the Government's inaction, id. at 27–32, and a Court order directing compliance with the MMPA will help redress plaintiffs' injury due to the Government's inaction, id.  Furthermore, plaintiffs are likely to succeed on their claim.  By failing to ban the fish imports as required by the MMPA, the Government unlawfully withheld agency action under § 706(1) of the Administrative Procedure Act ("APA").  Pursuant to the APA, this Court may enjoin agencies to undertake "mandatory" and "discrete" actions, such as instituting the import ban under the MMPA at issue here.  NRDC I at 18.  Moreover, an agency cannot override Congress' statutory command through regulatory means, as the Government contends it should be permitted to do here, id. at 20, 23, and plaintiffs established a fair likelihood that United States standards were exceeded, thus triggering the statutory mandate, id. at 35.  Requiring the Government to comply with the laws enacted by Congress did not "usurp" the agency's "role," Mot. for Stay at 16; the Government must comply with Congress's mandate that it "shall ban the importation of commercial fish or products from fish which have been caught with commercial fishing technology which results in the incidental kill or incidental serious injury of ocean mammals in excess of United States standards," NRDC I at 23 (citing 16 U.S.C. § 1371(a)(2)).

Nor did the Court abuse its discretion in weighing plaintiffs' irreparable harm against the Government's logistical concerns with implementing a ban.  Plaintiffs have demonstrated their

members' interests in the vaquita, and those interests would be irreparably harmed by the vaquita's

extinction. Moreover, the public interest is best served when the Government complies with the

law, namely the preservation of marine mammal populations, such as the vaquita here, on the verge

of extinction. Id. at 47–49. Furthermore, the ban ordered by this Court is a tailored one: only

particular fish and fish products caught with gillnets in the narrow geographic range of the vaquita

are banned. The ban specifically excludes fish and fish products "affirmatively identified as having

been caught with a gear type other than gillnets or affirmatively identified as caught outside the

vaquita's range." NRDC II at 14. Indeed, the Court notes that the Government has fully

implemented the ban. Aug. 31 Status Report; Oct. 1 Status Report. Moreover, the Government's

alleged harms of potentially chilled negotiations continue to be unpersuasive, NRDC I at 47, and

the declarations attached to the Government's motion to stay provide no better evidence of a

concrete rather than speculative injury. These negotiations have been proceeding since at least

2015, id., and "[r]elevant high-level government-to-government negotiations with Mexico remain

ongoing" while the embargo is in effect. Defs.' Mot. for Ext. of Time, Aug. 28, 2018, ECF No.

46, ("Mot. for Ext.") at 1. Indeed, the Government has even suggested that better vaquita

protections may be secured within the next few months. Mot. for Ext. at 1 (stating that "[Mexico

and the United States] appear close to reaching resolution on a number of issues related to

protection of the vaquita in Mexican waters"). More fundamentally, as has been noted and bears

repeating, the unambiguous language of the Imports Provision directs that the Secretary of

Treasury "shall" -- not may -- "ban the importation of commercial fish or products from fish which

have been caught with commercial fishing technology which results in the incidental kill or

incidental serious injury of ocean mammals in excess of United States standards." 16 U.S.C. §

1371(a)(2). This is a duty imposed by Congress, and it is not within the Government's discretion

to disregard this obligation based on its perception of a possible impact on foreign relations.  It is

implausible that Congress was unaware that embargoes or limitations on imports may impact

foreign relations.  Quite apart from the principle that the language of the statute is the clearest

indication of Congressional intent, the Court further notes that nothing in the MMPA's legislative

history indicates that Congress did not mean exactly what it directed.  See Ardestani v. INS, 502

U.S. 129, 135 (1991).  In short, Congress determined that when a marine mammal is endangered

-- such as the vaquita is here -- because of foreign fishing technologies, targeted embargoes on fish

caught using those technologies are the remedies to be imposed.  The Government's regulatory

preferences do not override this legislative command.  See Oceana, 670 F.3d at 1243.

## CONCLUSION

For the foregoing reasons, the Government has not met its burden for a stay of the

preliminary injunction pending appeal.  Consequently, its motion for a stay is denied.

**SO ORDERED.**

/s/      *Gary S. Katzmann*
Gary S. Katzmann, Judge

Dated:  October 22, 2018
New York, New York