Slip Op. 20 - 53

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| NATURAL RESOURCES DEFENSE COUNCIL, INC., CENTER FOR BIOLOGICAL DIVERSITY, and ANIMAL WELFARE INSTITUTE, <br><br> Plaintiffs, <br><br> v. <br><br> WILBUR ROSS, *in his official capacity as Secretary of Commerce*, UNITED STATES DEPARTMENT OF COMMERCE, CHRIS OLIVER, *in his official capacity as Assistant Administrator of the National Marine Fisheries Service*, NATIONAL MARINE FISHERIES SERVICE, STEVEN MNUCHIN, *in his official capacity as Secretary of the Treasury*, UNITED STATES DEPARTMENT OF THE TREASURY, CHAD WOLF, *in his official capacity as Acting Secretary of Homeland Security*, and UNITED STATES DEPARTMENT OF HOMELAND SECURITY, <br><br> Defendants. | Before: Gary S. Katzmann, Judge <br> Court No. 18-00055 |

## OPINION AND ORDER

[The court lifts its previously issued preliminary injunction and, in accordance with the stipulation, grants the motion for voluntary dismissal.]

Dated: <u>April 22, 2020</u>

Giulia C.S. Good Stefani and Vivian Wang, Natural Resources Defense Council, of Santa Monica, CA, for argued plaintiffs. With them on the stipulation and proposed order of voluntary dismissal was Sarah Uhlemann, of Seattle, WA, for plaintiffs, Center for Biological Diversity, and Animal Welfare Institute.

Stephen C. Tosini, Senior Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for defendants. With him on the stipulation and proposed order of voluntary dismissal were Joseph H. Hunt, Assistant Attorney General, Jeanne E. Davidson, Director, and Patricia M. McCarthy, Assistant Director. Of counsel was Jason Forman, National Oceanic and Atmospheric Administration, of Silver Spring, MD.

Katzmann, Judge:  Today, April 22, 2020, marks the 50th anniversary of Earth Day, a date that is often remembered as the birth of the modern environmental movement.  Today, as humankind is gripped by the deadly coronavirus pandemic, an ever present, brutal reminder of mortality, the court is presented again with the dire plight of the vaquita, the world's smallest porpoise on the verge of extinction.  Endemic to the northern Gulf of California, in the Sea of Cortez in Mexican waters, this panda of the sea, measuring only about five feet long and weighing one hundred pounds, has seen its population plummet from 567 in the late 1990s, when it was first surveyed, to approximately fifteen today.  It is undisputed that the vaquita is being caught inadvertently and tangled, strangled and drowned in the gillnets, which are fishing nets hung in the water to entangle fish and shrimp.  It is undisputed that the primary threat to the vaquita is gillnet fishing within the vaquita's range.  It is undisputed that the vaquita may soon disappear from the planet forever.

In an effort to avert such a catastrophe, the instant case was filed.  In response to that action, brought by Plaintiffs, Natural Resources Defense Council ("NRDC"), Center for Biological Diversity ("CBD"), and Animal Welfare Institute ("AWI") against Defendants (several United States agencies and officials, collectively "the Government") pursuant to the Marine Mammal Protection Act ("MMPA"), 16 U.S.C. §1371 (a)(2), the court issued a preliminary injunction requiring the Government, pending final adjudication of the merits, to ban the importation of all fish and fish products from the four specified Mexican commercial fisheries -- shrimp, curvina, chano and sierra -- that use gillnets within the vaquita's range,  unless affirmatively identified as having been caught with a gear type other than gillnets or affirmatively identified as having been caught outside the vaquita's range.  While the Government has fully implemented the preliminary injunction, it also sought, unsuccessfully, to overturn it.  Now, as this case headed for final

adjudication by the court, the Government has changed course, announcing an embargo that embraces the one sought by Plaintiffs in their complaint and preliminarily issued by the court; indeed, it expands its reach. In short, Plaintiffs have achieved the outcome they sought before the court in the suit they filed. Presented for the court's review is the settlement of the instant litigation as set forth in the Stipulation and Proposed Order of Voluntary Dismissal Under CIT Rule 41(a)(2), Apr. 10, 2020, ECF No. 112 ("Stipulation and Proposed Order"), filed by the parties. The court addresses below the Stipulation and Proposed Order.

## BACKGROUND AND DISCUSSION

The essential facts in this case are not in dispute. The vaquita, one of seven species of porpoise worldwide, was listed as an endangered species in 1985. Endangered Fish or Wildlife; Cochito, 50 Fed. Reg. 1056 (Jan. 9, 1985) (codified at 50 C.F.R. § 17.11). The vaquita is an evolutionarily distinct animal with no close relatives, whose loss would represent a disproportionate loss of biodiversity, unique evolutionary history, and the potential for future evolution. Jefferson Decl. ¶ 5, Mar. 19, 2018, ECF No. 14-4. It has been listed by the Zoological Society of London as a top Evolutionarily Distinct and Globally Endangered species, a list reserved for those species that are especially "unique . . . [and] when they are gone there will be nothing like them left on earth." Id. Its range in the northern Gulf of California is approximately 4,000 square kilometers and as relevant to this case, overlaps with commercial fisheries that target shrimp, curvina, chano, and sierra, and with an illegal fishery targeting the endangered totoaba. Jefferson Decl. ¶ 6; Compl. ¶¶ 35, 43, 51, Mar. 21, 2018, ECF No. 1. Notwithstanding that the Mexican government banned fishing for the totoaba, regardless of equipment, in 1975, Good Stefani Decl. Ex. 10, Gov't of Mexico Sept. 21, 2017 Letter to NOAA Fisheries, at 2, because of high demand for the fish's swim bladder on the Chinese black market, poachers continue to

illegally hunt for the fish, often with gillnets, Good Stefani Decl. Ex. 42, Comité Internacional para la Recuperación de la Vaquita ("CIRVA") [1] 10th Meeting Report, (Dec. 11–12, 2017). [2] Both Plaintiffs and the Government agree that, though the vaquita is not a target of Mexican fishermen, it is threatened and inadvertently killed by gillnets[3] deployed to capture these other species with which it shares its territory. The parties also agree that the vaquita is on the verge of extinction as a result.

The relevant legal and factual background of the prior proceedings has been set forth in greater detail in Natural Resources Defense Council, Inc. v. Ross, 42 CIT __, 331 F. Supp. 3d 1338 (2018). The court has exclusive jurisdiction over any civil action arising out of any law of the United States providing for "embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety," such as those prescribed by the MMPA. 28 U.S.C. § 1581(i)(3); see also Earth Island Institute v. Brown, 28

---

[1] Meaning the "International Committee for the Recovery of the Vaquita."

[2] "The totoaba cartels specialize in the poaching and trafficking of totoaba swim bladders -- the bottom half of the supply chain. The chain starts in the villages of San Felipe and Santa Clara along the Gulf of California coast, but moves quickly to central smuggling operations in cities like Tijuana and Mexicali. [The Elephant Action League] has found that these cartels are led primarily by three Mexican criminals who fund the Mexican poachers, and then sell the swim bladders to a group of well-connected Chinese traders and businessmen residing in Mexico. It is those Chinese traders that facilitate the smuggling of totoaba maws to China – the top of the supply chain." Elephant Action League, "Operation Fake Gold: The Totoaba Supply Chain" (July 2018) at 2447, A.R. 89.

[3] A gillnet is a wall of netting that fishermen hang vertically in the water column to catch target species. Jefferson Decl. ¶ 11. Gillnets come in various mesh sizes, and fishermen use them actively or set them with weights and buoys for later retrieval. Accordingly, gillnets kill species indiscriminately, except insofar as a given animal would not be of a size that would be caught in the webbing. Id. ¶ 12. In the United States, the use of gillnets is tightly regulated and banned in many areas. Oppenheim Decl. ¶¶ 15–17, Mar. 29, 2018, ECF No. 14-6. The Mexican government declared a temporary ban on some gillnet use within the vaquita's range in 2015. Good Stefani Decl. Exs. 1–2, 2015 Temporary Gillnet Ban and English Translation (Oct. 4, 2015).

F.3d 76, 79 (9th Cir. 1994) ("[Plaintiffs'] suit under the MMPA is an action arising under a law providing for embargoes. As such, it is reserved to the exclusive jurisdiction of the CIT."). Over the last two years, the saga of the vaquita has been presented to this court in vigorously contested litigation, as addressed in three opinions. See Natural Resources Defense Council, Inc. v. Ross, 42 CIT __, 331 F. Supp. 3d 1338 (2018) ("NRDC I"); Natural Resources Defense Council, Inc. v. Ross, 42 CIT __, 331 F. Supp. 3d 1381 (2018) ("NRDC II"); Natural Resource Defense Council, Inc. v. Ross, 42 CIT __, 348 F. Supp. 3d 1306 (2018) ("NRDC III").

On March 21, 2018, Plaintiffs brought a two-count suit in this court against the Government for agency action unlawfully withheld or unreasonably delayed under § 706(1) of the Administrative Procedure Act ("APA") and pursuant to the MMPA.[4] NRDC I, 331 F. Supp. 3d at 1352. The MMPA provides in relevant part that the Government "shall ban the importation of commercial fish or products from fish which have been caught with commercial fishing technology which results in the incidental kill or incidental serious injury of ocean mammals in excess of United States standards." 16 U.S.C. § 1371(a)(2); see also NRDC I, 331 F. Supp. 3d at 1346. Plaintiffs alleged that the vaquita, an endangered species of porpoise of which fewer than fifteen remain, faces extinction due to gillnet fishing in the small area in the northern Gulf of California it inhabits. See NRDC I, 331 F. Supp. 3d at 1344, 1351 n.11. They contended that the failure of

---

[4] Plaintiffs' First Claim for Relief alleged that the Government's failure to ban imports of fish caught with gillnets in Mexico's northern Gulf of California violated section 101(a)(2) of the Marine Mammal Protection Act ("MMPA"), 16 U.S.C. § 1371(a)(2), because shrimp, curvina, sierra, and chano fish caught with gillnets incidentally injure or kill the endangered vaquita porpoise in excess of United States standards, see Compl. ¶¶ 57–59; and Plaintiffs' Second Claim for Relief alleged that the Government's failure to insist on reasonable proof from the Mexican government regarding the effect of the use of gillnets in Mexican fisheries on the vaquita violated section 101(a)(2)(A) of the MMPA, 16 U.S.C. § 1371(a)(2)(A), see Compl. ¶¶ 61–65. On July 26, 2019, with the agreement of the parties, the court dismissed Plaintiffs' Second Claim for Relief as moot. NRDC I, 331 F.3d at 1356 n.12.

the Government to ban imports of fish harvested with gillnets from the vaquita's habitat constituted agency action unlawfully withheld or unreasonably delayed under the APA and MMPA. Id. at 1352.

On July 26, 2018, the court granted Plaintiffs' motion for a preliminary injunction "requiring the Government, pending final adjudication of the merits, to ban the importation of all fish and fish products from Mexican commercial fisheries that use gillnets within the vaquita's range." Id. at 1371–72. The court noted that "[w]hile [P]laintiffs and the Government argue about remedy, what cannot be disputed is that the vaquita's plight is desperate, and that even one more bycatch death in the gillnets of fisheries in its range threatens the very existence of the species." Id. at 1371. Furthermore, "[i]n granting the preliminary injunction ordering the embargo set forth in the statute, the court is simply directing compliance with a Congressional mandate that an import ban be imposed where marine mammals are killed at unsustainable rates because of commercial fishing technology used to catch other species." Id. "The public interest is served by ensuring that governmental bodies comply with the law." Id. (quoting Am. Signature, Inc. v. United States, 598 F.3d 816, 830 (Fed. Cir. 2010)).

On August 14, 2018, in response to the Government's Motion to Clarify, Aug. 3, 2018, ECF No. 34, which sought to limit the preliminary injunction, the court affirmed its original import ban, stating that its order made clear that the Government was "enjoined and ordered to ban the importation from Mexico all shrimp, curvina, sierra, and chano fish and their products caught with gillnets inside the vaquita's range." NRDC II, 331 F. Supp. 3d at 1383. On August 24, 2018, the Government filed a notice of appeal of this court's preliminary injunction to the Court of Appeals for the Federal Circuit. ECF No. 42. Although the Government had fully implemented the ban ordered by the preliminary injunction, it filed motions to stay the injunction pending appeal with

both this court and the Federal Circuit. Aug. 24, 2018, ECF No. 43; Natural Resources Defense Council, Inc. v. Ross, No. 18-2325 (Fed. Cir. Oct. 22, 2018), ECF No. 24. Those motions were denied on October 22, 2018 and November 28, 2018, respectively. NRDC III 348 F. Supp. 3d 1306; Order Denying Mot. to Stay, Natural Resources Defense Council, Inc. v. Ross, No. 18-2325 (Fed. Cir. Nov. 28, 2018), ECF No. 47 (per curiam).

On November 27, 2018, the National Marine Fisheries Service ("NMFS") issued its determinations on whether to impose an embargo on each of the four fisheries challenged by Plaintiffs. Decision Memorandum Regarding Comparability Findings for the Government Mexico's Fisheries in the Upper Gulf of California and Attachments (NOAA Nov. 27, 2018), Amended A.R. 103. NMFS imposed an import prohibition on curvina fish and fish products harvested in a curvina fishery. Id. Under a new Mexican regulatory scheme, this curvina fishery was the only fishery in the vaquita's range of the Gulf of California in which gillnets were allowed to be used. Def.'s Mot. to Dismiss as Moot at 5, Dec. 4, 2018, ECF No. 72. Thus, the Government explained, it declined to impose an embargo on the shrimp, chano, and sierra fisheries in the vaquita's range. Id. On December 4, 2018, the Government moved this court to dismiss Plaintiffs' action as moot. Id.

In its motion to dismiss, the Government claimed, notwithstanding that it had not effectuated the relief sought by Plaintiffs, that its decisions constituted final agency actions; consequently, it argued that the court could no longer grant the remedy sought by Plaintiffs under APA § 706(1) and therefore Plaintiffs' claim was moot. Id. The Government further contended that because the purpose of a preliminary injunction is to preserve the status quo of the parties until a trial on the merits can be held, and there can be no trial on the merits of a moot claim, the court was required to vacate its preliminary injunction. Id. at 6.

In their brief filed on January 18, 2019, Plaintiffs argued that their claims related to the shrimp, sierra, and chano gillnet fisheries were not moot because the Government's actions did not comply with the MMPA's mandate that the Government shall ban imports of fish from fisheries that do not meet U.S. standards, and no exception to the relevant MMPA provision is made based on removal from the List of Foreign Fisheries. See Pls.' Opp'n to Def.'s Mot. to Dismiss as Moot at 11, Jan. 18, 2019, ECF No. 78. See also NRDC II, 331 F. Supp. 3d. at 1386 n.4. Plaintiffs also contended that their claim regarding the curvina fishery was not moot because the Government's determination was not equivalent to the comprehensive import ban on all gillnet curvina fisheries within the vaquita's range that the MMPA requires and that Plaintiffs sought. Id. at 15–16. Plaintiffs claimed that the preliminary injunction must remain in effect because the vaquita remained imperiled and the alternative measures taken or promised by the governments of the United States and Mexico were unlikely to halt the import of the fish in question. Id. at 17.

In its reply brief filed on January 23, 2019, the Government contended that Plaintiffs' arguments against its motion to dismiss as moot were in fact arguments about the substance of the Government's final actions that must be challenged under 5 U.S.C. § 706(2), not § 706(1). See Def.'s Reply in Supp. of Their Mot. to Dismiss as Moot at 1, Jan. 23, 2019, ECF No. 79. The Government also asserted that, although it bears the burden as the movant to show that Plaintiffs' claim is moot, the burden of proof remains with Plaintiffs as the parties seeking to invoke jurisdiction. Id. at 2 (citation omitted). According to the Government, the court's power to compel agency action under § 706(1) does not include the power to substitute the court's discretion for that of the agency in determining what form of action is most appropriate. Id. at 4 (citation omitted). Moreover, the Government contested Plaintiffs' assertions about the efficacy of the embargo in place on fish from the curvina fishery and of Mexico's regulatory scheme more

broadly.  Id. at 6–7.  Citing the ongoing harm to the Government resulting from the preliminary injunction, the Government requested an expedited ruling.  Id. at 7.

Oral argument on the issue was held on April 30, 2019.  ECF No. 87.  Upon consideration of the pleadings and oral argument, the court stayed all proceedings pending the Federal Circuit's determination on appeal of the preliminary injunction.  Order to Stay Proceedings, May 3, 2019, ECF No. 90.  On appeal, the Federal Circuit did not reach the merits of the preliminary injunction.  Rather, the Federal Circuit remanded to this court to review in the first instance the new factual circumstances put forth by the Government in its motion to dismiss as moot and to determine whether they altered the basis for the preliminary injunction.  Natural Resources Defense Council, Inc. v. Ross, 774 Fed. Appx. 646, 649 (Fed. Cir. 2019).  The Federal Circuit directed that the preliminary injunction "remain in force pending further determination."  Id.

With the case returned to this court for the final adjudication of the merits, the court posed detailed questions to the parties regarding the motion to dismiss as moot.  Order for Suppl. Brs., Jan. 24, 2020, ECF No. 102.  Events would prove it unnecessary for the parties to respond to those questions.  Although the Government had consistently objected on the merits of the import ban ordered by the court's preliminary injunction, it changed course.  On March 9, 2020, the Government -- specifically the National Oceanic and Atmospheric Administration ("NOAA") of the Department of Commerce -- published a Federal Register notice stating the Government of Mexico "lack[s] . . . a regulatory program comparable in effectiveness to the U.S. regulatory program for mitigating fishery bycatch of marine mammals" and "has failed to fully implement and enforce its existing laws and regulatory regime including the existing gillnet ban."  Implementation of Fish and Fish Product Import Provisions of the Marine Mammal Protection Act – Notification of Revocation of Comparability Findings and Implementation of Import

Restrictions; Certification of Admissibility for Certain Fish Products From Mexico, 85 Fed. Reg. 13,626, 13,627–28 (Mar. 9, 2020) ("Notification of Revocation"). The notice announced, among other actions, that "the Secretary of Commerce, in cooperation with the Secretaries of Treasury and Homeland Security" will "immediately ban the importation from Mexico of all shrimp, curvina, sierra, chano" and certain other fish and their products that are "caught with gillnets inside the vaquita's range under section 101(a)(2) of the MMPA (16 U.S.C. § 1371(a)(2))." Id. The embargo announced in the notice thus bans the four fisheries at issue in Plaintiffs' first claim for relief under section 101(a)(2) of the MMPA. See Compl. ¶¶ 57–59. Indeed, not only does the embargo encompass the ban ordered by the court in the preliminary injunction (in response to the Plaintiffs' claims for relief), but it expands the reach of that ban to include "anchovy, herrings, sardines, mackerels croaker, and pilchard fish and fish products . . . caught inside the vaquita's range under section 101(a)(2) of the MMPA [16 U.S.C. 1371 (a)(2)]." Notification of Revocation at 13,628.

## CONCLUSION

On April 10, 2020, the parties filed their Stipulation and Proposed Order, setting forth for the court's review the settlement of the instant litigation. There, the parties noted that: (1) the March 9, 2020 Federal Register notice specified the import restrictions would become effective April 3, 2020, and as of that date, the Government has embargoed all shrimp, curvina, sierra, and chano fish and fish products caught with gillnets inside the vaquita's range; and (2) the parties "have reached an agreement as to Plaintiffs' claims for attorney fees and litigation costs in this case pursuant to which Plaintiff NRDC agrees to bear its own attorneys' fees and costs, and the United States agrees to pay Plaintiffs CBD and AWI a total of $35,000.00 in full and complete satisfaction of any and all claims, demands, rights, and causes of action pursuant to the Equal

Access to Justice Act, 28 U.S.C. § 2412(d), the [Endangered Species Act], 16 U.S.C. § 1540(g), and/or any other statute and/or common law theory for attorneys' fees and costs incurred through and including the date of this agreement in connection with this litigation." Stipulation and Proposed Order at 2–3 (citations omitted). With the Government acceding to the relief sought by Plaintiffs in their complaint and provided by the court's preliminary injunction -- indeed now expanding the breadth of the embargo -- Plaintiffs seek voluntary dismissal of this action without prejudice pursuant to Court of International Trade Rule 41(a)(2).

Rule 41(a)(2) states that a plaintiff can request the voluntarily dismissal of an action "by court order, on terms that the court considers proper." CIT R. 41(a)(2). The court conducted a hearing regarding the Proposed Order via teleconference on April 21, 2020. ECF No. 114 (also available at U.S. Court of International Trade, <u>Audio Recordings of Select Public Court Proceedings</u>, https://www.cit.uscourts.gov/audio-recordings-select-public-court-proceedings). After due consideration, the court lifts the preliminary injunction it had issued in this case and grants the request to voluntarily dismiss this action without prejudice. It also directs that the Government shall pay Plaintiffs CBD and AWI a total of $35,000.00 pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d). As requested, the court retains jurisdiction to enforce the Government's payment obligations under the parties' agreement on attorneys' fees and costs associated with this case. The Order is issued below.

The road to this day has been a tortuous one. The vaquita remains an endangered species; every death brings it perilously close to disappearing from the planet forever. The illegal trade in the totoaba, caught in gillnets which catch and strangle the vaquita, is a matter not before this court -- but the need for vigorous international enforcement against its continuing threat is a compelling one. On this Earth Day, as we ponder the imperatives of biodiversity and the environment, we

would do well to heed the sobering words of Rachel Carson: "So delicately interwoven are the relationships that when we disturb one threat of the community fabric we alter it all -- perhaps almost imperceptibly, perhaps so drastically that destruction follows."[5]  The panda of the sea, the little cow, cannot be replaced.

    For the reasons stated, the Order of Voluntary Dismissal is granted as requested.

    **SO ORDERED.**

                                              /s/     *Gary S. Katzmann*
                                                Gary S. Katzmann, Judge

Dated: April 22, 2020
       New York, New York

---

[5] Rachel Carson, Essay on Biological Sciences, in Good Reading (Atwood Townshend & J. Sherwood Weber eds., 1958).

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| NATURAL RESOURCES DEFENSE COUNCIL, INC., CENTER FOR BIOLOGICAL DIVERSITY, and ANIMAL WELFARE INSTITUTE,<br><br>     Plaintiffs,<br> v.<br><br>WILBUR ROSS, *in his official capacity as Secretary of Commerce*, UNITED STATES DEPARTMENT OF COMMERCE, CHRIS OLIVER, *in his official capacity as Assistant Administrator of the National Marine Fisheries Service*, NATIONAL MARINE FISHERIES SERVICE, STEVEN MNUCHIN, *in his official capacity as Secretary of the Treasury*, UNITED STATES DEPARTMENT OF THE TREASURY, CHAD WOLF, *in his official capacity as Acting Secretary of Homeland Security*, and UNITED STATES DEPARTMENT OF HOMELAND SECURITY,<br><br>     Defendants. | Before: Gary S. Katzmann, Judge<br>Court No. 18-0005518-00055 |

## ORDER OF VOLUNTARY DISMISSAL UNDER CIT Rule 41(a)(2)

   This matter came before the court on a Stipulation and Proposed Order of Voluntary Dismissal Under CIT Rule 41(a)(2), April 10, 2020, ECF No. 112 ("Stipulation and Proposed Order"), filed jointly by Plaintiffs Natural Resources Defense Council, Inc.; Center for Biological Diversity ("CBD"); and Animal Welfare Institute ("AWI"); and Defendants Wilbur Ross, in his official capacity as Secretary of Commerce; United States Department of Commerce; Chris Oliver, in his official capacity as Assistant Administrator of the National Marine Fisheries Service; National Marine Fisheries Service; Steven Mnuchin, in his official capacity as Secretary of the Treasury; United States Department of the Treasury; Chad Wolf, in his official capacity as Acting Secretary of Homeland Security; and United States Department of Homeland Security.

The Stipulation and Proposed Order present terms that the court deems proper. It is hereby **GRANTED AS REQUESTED**, and this matter is dismissed without prejudice. Defendants shall pay Plaintiffs CBD and AWI a total of $35,000.00 pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d). The court retains jurisdiction to enforce Defendants' payment obligations under the Parties' agreement on attorneys' fees and costs associated with this case.

**SO ORDERED.**

/s/     *Gary S. Katzmann*
Gary S. Katzmann, Judge

Dated: April 22, 2020
        New York, New York